UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:  CAMBRIDGE COMMERCIAL      :
       REALTY, LLC,                              :    Case No. 11-21149REF
          Debtor-in-Possession        :    Chapter 11

# STATEMENT SUPPORTING JULY 1, 2011 ORDER ANNULLING AUTOMATIC STAY

# I. INTRODUCTION AND BACKGROUND

Debtor filed this Chapter 11 case at 9:50 a.m., on Friday April 29, 2011. A sheriff's sale of Debtor's real property had been scheduled to begin at 10:00 a.m., that day, on the foreclosure proceeding of Lafayette Ambassador Bank ("LAB"). Debtor's counsel attempted to notify LAB's counsel but could not do so because the email system of LAB's counsel was down that morning.[1] Debtor's counsel also attempted to notify the sheriff's office about Debtor's bankruptcy but

---

[1] Debtor attempted to add, attached to its June 24, 2011 brief, an email chain that purports to show that counsel for LAB knew that counsel for Debtor said that Debtor intended to file its bankruptcy if LAB proceeded to sale. I reject this evidence for two reasons. First, it was not brought out, discussed, or moved into evidence at the June 16, 2011 hearing. Second, it does not prove a bankruptcy filing, but only a stated threat to file. In many, many instances in many, many negotiations counsel threaten that they will take steps that they ultimately, for one reason or another, do not take. Neither LAB, its counsel, nor the sheriff were on notice about Debtor's bankruptcy filing merely because Debtor's counsel might have threatened it.

could not do so because all of the sheriff's foreclosure staff were already away from the office and involved with the sheriff sale. Despite the filing of this bankruptcy by Debtor, the sheriff sale of its property proceeded.

On May 11, 2011, LAB filed its motion for relief from the automatic stay of Section 362 of the Bankruptcy Code. Through its stay motion, LAB sought two remedies. First, LAB asked (1) that the stay be annulled so that the April 29, 2011 sheriff sale of Debtor's property would not be void and (2) that relief from the stay be granted prospectively to allow LAB to proceed with its collection efforts and foreclosure. After two continuances, I held the hearing on LAB's stay motion on June 16, 2011. At the end of the June 16, 2011 hearing, I entered my bench order modifying and lifting the automatic stay to permit LAB to proceed with its state law remedies with respect to Debtor's real property. I then took the issue of annulment of the stay under advisement and allowed Debtor to file a brief in support of its opposition to annulment by June 24, 2011. Debtor filed its brief and this matter is ripe for my decision.

LAB made clear, despite Debtor's refusal to stipulate and pleadings denying the same, that the principal, sole owner/member, and sole officer of all matters having anything to do with Debtor is the same gentleman who holds all of those positions with the related company, Cambridge Medical Staffing ("CMS").

CMS was a previous debtor in bankruptcy whose case was recently dismissed for its failure to perform the tasks required of a debtor under the Bankruptcy Code. LAB claims that the failure of CMS to perform its obligations in the prior bankruptcy is indicative of Debtor's inequitable conduct or unreasonable or dishonest behavior.

When asked in his examination at the June 16, 2011 hearing, the principal of Debtor admitted that the reason that Debtor had filed its Chapter 11 bankruptcy was to stop the sheriff sale. Then, only when prompted by his counsel, he added that Debtor wanted to work out a plan to repay its debt.

As noted above, at the June 16, 2011 hearing, I granted LAB's motion for stay relief insofar as it sought prospective relief only. I took under advisement LAB's request that the relief from the stay include annulment of the stay retroactive to the sheriff sale. I granted immediate relief from the stay for all of the reasons that I set forth orally at the June 16, 2011 hearing, which I hereby incorporate by reference into this Statement. I summarize my grounds for the decision by noting that Debtor proved nothing at all that would establish that it has or had any chance whatsoever of reorganizing or preparing any plan of reorganization.

The 14-day appeal period[2] from my June 16, 2011 bench order expired last night, June 30, 2011.

## II. DISCUSSION

Both parties refer me to the recent decision of former Chief Judge Sigmund in In re Speights, 2008 WL 2096798, No. 08-11543 (Bankr. E.D. Pa., May 15, 2008). Judge Sigmund reviewed and summarized a number of decisions[3] relating to annulment of the automatic stay in Speights and found a number of factors might be considered in annulling the stay. Id., at *2-3. She noted that exceptional circumstances are sometimes required, while in all instances, a balancing of the equities occurs. She identifies three major factors (referred to me by Debtor in its June 24, 2011 brief) as: Did the creditor have notice of the filing of the bankruptcy; did the debtor engage in inequitable conduct or unreasonable or dishonest behavior, such as abusive or repetitive filings;[4] and would the creditor suffer prejudice, including the expenses of beginning anew with its enforcement

---

[2] Fed. R. Bkrtcy Proc., Rule 4001(a)(3).
All citations in this Statement comply with Judge Richard A. Posner's suggested citation form in the appendix to his 1986 law review article. Richard A. Posner, Goodbye to the Bluebook, 53 U. Chi. L. Rev. 1343 Appendix (Fall, 1986).

[3] In re Myers, 491 F.3d 120, 127-29 (3d Cir. 2007);In re Siciliano, 13 F.3d 748 (3d Cir. 1994); In re Siciliano, on remand, 167 B.R. 999, 1007-09 (Bankr. E.D. Pa. 1994).

[4] In Speights, Judge Sigmund faced the issue of repetitive filings by related persons.

remedies. Id., at *2. Judge Sigmund specifically referred to consideration of "the absence of any legitimate purpose for redoing the sheriffs sale." Id., at *3. She also countenanced "the weighing of the equities." Id., at *2.

Weighing and balancing the equities leads me to the following findings of fact and conclusions of law. First, neither LAB, its counsel, nor the sheriff had notice of the filing of Debtor's bankruptcy when they proceeded with the sale of Debtor's property. Second, the repetitive filings by Debtor and CMS are weak evidence of abusive or repetitive filings. Third, because no appeal was filed from my decision to permit LAB to proceed prospectively, I see a total absence of any legitimate purpose for redoing the April 29, 2011 sheriff sale. I also see in this issue that Debtor is not injured in any respect at all. Rather than LAB going to sheriff sale in a few months, the April sale will be valid. I see no difference other than a reduction in the costs and expenses that LAB will occur, which would then constitute additional components of the debt owed by Debtor.

## III. CONCLUSION

I have weighed the three primary factors. I find and conclude, first, that the creditor LAB, its counsel, and the sheriff did not have notice of the bankruptcy or the stay. This is a very strong factor and was clearly and unquestionably proven. I find and conclude, second, that Debtor was part of two repetitive bankruptcy filings and that its sole goal in filing the April 29, 2011

bankruptcy was to avoid the sheriff sale. This proof of inequitable or unreasonable conduct is not absolute and strong. But, I find and conclude, third, that annulling the stay saves expenses, time, and effort for both LAB and Debtor, and most importantly, causes Debtor no harm whatsoever in light of my grant of prospective relief from the stay through my June 16, 2011, bench order.

        I will issue an order granting the motion to annul the automatic stay.

DATE: July 1, 2011

BY THE COURT

_____
RICHARD E. FEHLING
United States Bankruptcy Judge